No. 4:25-cv-01580

In the United States District Court for the Eastern District of Missouri

————————————

THE STATE OF MISSOURI, ET AL.,

*Intervenor-Plaintiffs*,

v.

U.S. FOOD AND DRUG ADMINISTRATION, ET AL.,

*Defendants*.

————————————

BRIEF OF ADVANCING AMERICAN FREEDOM, INC.; ALABAMA POLICY INSTITUTE; AMERICAN ASSOCIATION OF SENIOR CITIZENS; AMERICAN VALUES; AMERICANS UNITED FOR LIFE; AMERICA'S WOMEN; ANGLICANS FOR LIFE; ASSOCIATION OF MATURE AMERICAN CITIZENS ACTION; FRAN BEVAN, PHYLLIS SCHLAFLY'S PENNSYLVANIA EAGLE FORUM; JEFF BRADFORD, PRESIDENT, HUMAN COALITION; CENTER FOR URBAN RENEWAL AND EDUCATION (CURE); CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; DANIEL DARLING, DIRECTOR, LAND CENTER FOR CULTURAL ENGAGEMENT; DEMOCRATS FOR LIFE; EAGLE FORUM; FAMILY COUNCIL IN ARKANSAS; FAMILY INSTITUTE OF CONNECTICUT ACTION; FRONTIERS OF FREEDOM; CHARLIE GEROW; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN ENDORSERS; TIM JONES, FORMER SPEAKER, MISSOURI HOUSE, FOUNDER, LEADERSHIP FOR AMERICA INSTITUTE; DR. ALVEDA KING; LOUISIANA FAMILY FORUM; MEN AND WOMEN FOR A REPRESENTATIVE DEMOCRACY IN AMERICA, INC.; NATIONAL RELIGIOUS BROADCASTERS; NEW YORK STATE CONSERVATIVE PARTY; NORTH CAROLINA VALUES COALITION; ORTHODOX JEWISH CHAMBER OF COMMERCE; 60 PLUS ASSOCIATION; PAUL STAM, FORMER SPEAKER PRO TEM, NORTH CAROLINA HOUSE OF REPRESENTATIVES; STUDENTS FOR LIFE OF AMERICA; THE FAMILY FOUNDATION OF VIRGINIA; THE WAGNER CENTER; TRADITION, FAMILY, PROPERTY, INC.; RICHARD VIGUERIE, CHAIRMAN, CONSERVATIVEHQ.COM; SUZI VOYLES, PRESIDENT, EAGLE FORUM OF GEORGIA; WISCONSIN FAMILY ACTION, INC.; AND WOMEN FOR DEMOCRACY IN AMERICA, INC. AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS

————————————

J. MARC WHEAT
   *Counsel of Record*
(VA State Bar No. 39602)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amicus Curiae*

March 30, 2026

## CORPORATE DISCLOSURE STATEMENT

Amici curiae Advancing American Freedom; Alabama Policy Institute; American Association of Senior Citizens; American Values; Americans United for Life; America's Women; Anglicans for Life; Association of Mature American Citizens Action; Fran Bevan, Phyllis Schlafly's Pennsylvania Eagle Forum; Jeff Bradford, President, Human Coalition; Center for Urban Renewal and Education (CURE); Christian Medical & Dental Associations; Daniel Darling, Director, Land Center for Cultural Engagement; Democrats for Life; Eagle Forum; Family Council in Arkansas; Family Institute of Connecticut Action; Frontiers of Freedom; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; Tim Jones, Former Speaker, Missouri House, Founder, Leadership for America Institute; Dr. Alveda King; Louisiana Family Forum; Men and Women for a Representative Democracy in America, Inc.; National Religious Broadcasters; New York State Conservative Party; North Carolina Values Coalition; Orthodox Jewish Chamber Of Commerce; 60 Plus Association; Paul Stam, Former Speaker Pro Tem, North Carolina House of Representatives; Students for Life of America; The Family Foundation of Virginia; The Wagner Center; Tradition, Family, Property, Inc.; Richard Viguerie, Chairman, ConservativeHQ.com; Suzi Voyles, President, Eagle Forum of Georgia; Wisconsin Family Action, Inc.; and Women for Democracy in America, Inc. are nonprofit corporations. They do not issue stock and are neither

i

owned by nor are they owners of any other corporate entity, in part or in whole. They have no parent companies, subsidiaries, affiliates, or members that have issued shares or debt securities to the public. The corporations are operated by volunteer boards of directors.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF AUTHORITIES ............................................................iv

STATEMENT OF INTEREST OF AMICI......................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................3

ARGUMENT ........................................................................6

    I.    Missouri Retains Powers Which the Constitution Neither Delegates to the Federal Government nor Denies to the States, Including the Power to Regulate Abortion ...............................6

    II.    By Dropping the In-Person Requirement for Obtaining Mifepristone, the FDA Impaired Missouri's Authority to Enforce Its Pro-Life Laws ................................................10

    III.    Missouri has Standing to Sue the FDA for Undermining its Authority to Enforce its Aboriton Laws ........................................15

CONCLUSION .....................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alfred L. Snapp and Son, Inc. v. Puerto Rico ex rel. Barez,*
   458 U.S. 592 (1982)...............................................................................16

*Atascadero State Hospital v. Scanlon,*
   473 U.S. 234 (1985).................................................................................6

*Berman v. Parker,*
   348 U.S. 26 (1954)...................................................................................7

*Chisholm v. Georgia,*
   2 U.S. 419 (1793).....................................................................................6

*Dent v. West Virginia,*
   129 U.S. 114 (1889).................................................................................7

*Dobbs v. Jackson Women's Health Organization,*
   597 U.S. 215 (2022)........................................................................ *passim*

*Gonzales v. Carhart,*
   550 U.S. 124 (2007).................................................................................7

*Gonzales v. Oregon,*
   546 U.S. 243 (2006).................................................................................7

*Griswold v. Connecticut,*
   381 U.S. 479 (1965).................................................................................8

*McCulloch v. Maryland,*
   17 U.S. 316 (1819)...................................................................................6

*Planned Parenthood v. Ashcroft,*
   461 U.S. 476  (1983).................................................................................9

*Planned Parenthood v. Casey,*
   505 U.S. 833 (1992).................................................................................9

*Planned Parenthood v. Danforth,*
   428 U.S. 52 (1976)...................................................................................9

*Roe v. Wade*,
  410 U.S. 113 (1973)..................................................................................3, 8, 9, 11

*United States v. Lopez*,
  514 U.S. 549 (1995)..................................................................................6

*United States v. Morrison*,
  529 U.S. 598 (2000)..................................................................................7

*Washington v. Glucksberg*,
  521 U.S. 702 (2000)..................................................................................7

*Washington v. U.S. Food and Drug,*
  *Adm.*, 108 F.4th 1163 (9th Cir. 2024) .......................................................... 15, 16

*Webster v. Reproductive health services*,
  492 U.S. 490 (1989)..................................................................................9

## Constitution:

Amend. X ....................................................................................................3, 6

Amend. XIV .................................................................................................8

Art. VI ........................................................................................................9

## Statutes and Regulations:

Mo. Rev. Stat. § 188.015(1) ........................................................................9

Mo. Rev. Stat. § 188.017.............................................................................9

## Other Authorities:

Abigail R.A. Aiken, James G. Scott, Rebecca Gomperts, *Provision of
  Abortion Medications Using Online Asynchronous Telemedicine
  Under Shield Laws in the US*, JAMA. 2025;334(15):1388–1390.
  doi:10.1001/jama.2025.11420 .................................................................12

David S. Cohen et al., *Abortion Shield Laws* 2 NEJM Evidence
  (March 28, 2023) (emphasis added) https://evidence.nejm.org/
  doi/full/10.1056/EVIDra2200280 ...........................................................14

Comment of Advancing American Freedom Foundation in Citizen Petition
    from GenBioPro, Inc. (FDA-2025-P-2162),
    https://www.regulations.gov/comment/FDA-2025-P-2162-0012..........................4

Comment of Advancing American Freedom Foundation in Citizen Petition
    from American College of Obstetricians and Gynecologists (FDA-2025-p-
    0377), https://www.regulations.gov/comment/FDA-2025-P-0377-0038 ..............4

Comment of Advancing American Freedom Foundation in Citizen Petition
    from Attorney General of Massachusetts, et al (FDA-2025-P-1576),
    https://www.regulations.gov/document/FDA-2025-P-1576-0001........................4

Julie Dohm, Mingham Ji, *An Introduction to Risk Evaluation
    and Mitigation Strategies*, 104 Contraception 4 (2021),
    https://www.contraceptionjournal.org/action/showPdf?pii=S0010-
    7824%2821%2900134-7 ...............................................................................10

Frederick N. Dyer, *The Physicians' Crusade Against Abortion* 76 (1999)..............8

FACT SHEET: President Biden Announces Actions In Light of Today's
    Supreme Court Decision on *Dobbs v. Jackson Women's Health
    Organization*, June 24, 2022, https://bidenwhitehouse.archives.gov/
    briefing-room/statements-releases/2022/06/24/fact-sheet-president-biden-
    announces-actions-in-light-of-todays-supreme-court-decision-on-dobbs-v-
    jackson-womens-health-organization/...................................................................11

Edwin J. Feulner, Jr., *Conservatives Stalk the House: The Story of the
    Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983)...................1

*Get an Abortion Pill Online in Missouri-Order Here*, Aid Access (last
    visited Mar. 26, 2026) https://aidaccess.org/en/page/2934676/where-can-i-
    buy-the-abortion-pill-online-in-missouri ...........................................................12

Government Accountability Office, *Approval and Oversight of the Drug
    Mifeprex* 45 (2008) ...................................................................................10

Jamie Bryan Hall, Ryan T. Anderson, *The Abortion Pill Harms Women:
    Insurance Data Reveals One in Ten Patients Experiences a Serious
    Adverse Event*, Ethics and Public Policy Center 1 (April 28, 2025)
    https://media.eppc.org/2025/04/25-04-The-Abortion-Pill-Harms-
    Women.pdf ...........................................................................................4, 14

Dennis J. Horan and Thomas J. Marzen, *Abortion and Midwifery: A Footnote in Legal History*, in New Perspectives on Human Abortion 200 (1981) ...............................................................7

Independence Index: Measuring Life, Liberty and the Pursuit of Happiness, Advancing American Freedom available at https://advancingamericanfreedom.com/aaff-independence-index/ ........................ 2

Thomas Jipping, *Abortion "Shield" Laws Undermine Interstate Comity and Medical Practice and Raise Constitutional Questions*, Heritage Found. L. Mem. No. 366, December 30, 2024.................................14, 15

Thomas Jipping and Sarah Parshall Perry, Dobbs v. Jackson Women's Health Organization*: An Opportunity to Correct a Grave Error*, Heritage Found. Legal Mem. No. 293, Nov. 17, 2021, at 9-11 .............................8

Rachel K. Jones et al., *Medication Abortion Now Accounts for More Than Half of All US Abortions*, Guttmacher Institute, Feb. 2022, https://www.guttmacher.org/article/2022/02/medication-abortion-now-accounts-more-half-all-us -abortions ..................................................10

Letter from Janet Woodcock, MD, to Maureen G. Phipps, MD, and William Gorbman, MD (Apr. 12, 2021) https://prochoice.org/wp-content/uploads /FDA-Acting-Commissioner-Letter-to-ACOG-April-12-2021.pdf.....................11

Calum Miller, *Telemedicine Abortion: Why It Is Not Safe for Women*, in *Agency, Pregnancy and Persons: Essays in Defense of Human Life* 288, 296 (Nicholas Colgrove, ed. 2023), https://api.pageplace.de/preview/ DT0400.9781000622638_A43060622/preview-9781000622638_A43060622.pdf...........................................................4

Remarks by President Biden on the Supreme Court Decision to Overturn *Roe v. Wade*, June 24, 2022, https://bidenwhitehouse.archives.gov/ briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/ ...................................11

The Federalist No. 45 (James Madison) (George Carey & James McClellan eds., The Liberty Fund 2001) ...............................................................6

## STATEMENT OF INTEREST OF AMICI

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that uphold traditional American values, including the constitutional structure that America's Founders designed.[1] Maintaining that structure is critical for limiting government and, therefore, helping to fulfill the very purpose of government, namely, securing inalienable rights. A key component of that structure is each state's authority to exercise powers reserved to it. Specifically, this case involves the authority of states, following the clarification that "the Constitution does not confer a right to abortion," in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 292 (2022), to regulate abortion. When the Food and Drug Administration, contrary to federal law, authorized obtaining mifepristone, a dangerous drug intended to cause abortion, through the mail, it caused the very assault on this state authority that we see unfolding today. AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes American prosperity depends

---

[1] No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of amicus briefs.

[2] Edwin J. Feulner, Jr., *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

on ordered liberty and self-government.[3] AAF submits this amicus curiae brief on behalf of its 4,085 members in Missouri.

*Amici* Alabama Policy Institute; American Association of Senior Citizens; American Values; Americans United for Life; America's Women; Anglicans for Life; Association of Mature American Citizens Action; Fran Bevan, Phyllis Schlafly's Pennsylvania Eagle Forum; Jeff Bradford, President, Human Coalition; Center for Urban Renewal and Education (CURE); Christian Medical & Dental Associations; Daniel Darling, Director, Land Center for Cultural Engagement; Democrats for Life; Eagle Forum; Family Council in Arkansas; Family Institute of Connecticut Action; Frontiers of Freedom; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; Tim Jones, Former Speaker, Missouri House, Founder, Leadership for America Institute; Dr. Alveda King; Louisiana Family Forum; Men and Women for a Representative Democracy in America, Inc.; National Religious Broadcasters; New York State Conservative Party; North Carolina Values Coalition; Orthodox Jewish Chamber Of Commerce; 60 Plus Association; Paul Stam, Former Speaker Pro Tem, North Carolina House of Representatives; Students for Life of America; The Family Foundation of Virginia; The Wagner Center; Tradition, Family,

---

[3] Independence Index: Measuring Life, Liberty and the Pursuit of Happiness, Advancing American Freedom available at https://advancingamericanfreedom.com/aaff-independence-index/.

2

Property, Inc.; Richard Viguerie, Chairman, ConservativeHQ.com; Suzi Voyles, President, Eagle Forum of Georgia; Wisconsin Family Action, Inc.; and Women for Democracy in America, Inc. believe that preserving the authority of states to enact and enforce laws to protect the people in their states, including those prohibiting abortion, is essential to the protection of the rights and liberties of the American people.

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. These reserved powers include the authority to enact and enforce laws regulating and prohibiting abortion, which Missouri first exercised more than 200 years ago. The Supreme Court improperly compromised this state authority between 1973, when it contrived a constitutional right to abortion in *Roe v. Wade*, 410 U.S. 113 (1973), and 2022, when it overruled *Roe*, holding that the Constitution "does not confer a right to abortion" and that "the authority to regulate abortion must be returned to the people and their elected representatives." *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 292 (2022). Since then, Missouri has exercised its authority to prohibit using abortion drugs or obtaining them through the mail.

3

The Food and Drug Administration (FDA) approved the marketing of mifepristone, the drug used to cause abortion, in 2000 under dubious legality yet also unusually strict safety rules.[4] These included the requirement of obtaining the drug in-person from a physician, a restriction the FDA retained through multiple revisions of its safety protocol.[5] Since the FDA abandoned the in-person dispensing requirement for mifepristone in 2023, abortion activists have aggressively promoted and provided it across the country, leading to thousands of abortions in pro-life states that prohibit abortion drugs.[6] These efforts often originate in states with so-called

---

[4] A study from the Ethics and Public Policy Institute suggests the rate of adverse effects may be twenty-two times higher than reported by the FDA on mifepristone's labels. Jamie Bryan Hall, Ryan T. Anderson, *The Abortion Pill Harms Women: Insurance Data Reveals One in Ten Patients Experiences a Serious Adverse Event*, Ethics and Public Policy Center 1 (April 28, 2025) https://media.eppc.org/2025/04/25-04-The-Abortion-Pill-Harms-Women.pdf.

[5] *See* Comment of Advancing American Freedom Foundation in Citizen Petition from GenBioPro, Inc. (FDA-2025-P-2162) https://www.regulations.gov/comment/FDA-2025-P-2162-0012; Comment of Advancing American Freedom Foundation in Citizen Petition from American College of Obstetricians and Gynecologists (FDA-2025-p-0377) https://www.regulations.gov/comment/FDA-2025-P-0377-0038; Comment of Advancing American Freedom Foundation in Citizen Petition from Attorney General of Massachusetts, et al (FDA-2025-P-1576) https://www.regulations.gov/document/FDA-2025-P-1576-0001.

[6] Researchers in the United Kingdom found that ambulance calls increased significantly after that country began to allow abortion drugs to be mailed to women rather than requiring an in-person visit to a doctor. Calum Miller, *Telemedicine Abortion: Why It Is Not Safe for Women*, *in Agency, Pregnancy and Persons: Essays in Defense of Human Life* 288, 296 (Nicholas Colgrove, ed. 2023) https://api.pageplace.de/preview/DT0400.9781000622638_A43060622/preview-9781000622638_A43060622.pdf.

4

"shield" laws intended to frustrate the ability of pro-life states to enforce their laws. This campaign of intentionally frustrating Missouri law in a manner designed to make enforcement especially difficult would not be possible without the FDA dropping the in-person dispensing requirement. This nexus means that Missouri has standing to challenge the FDA's action.

States' pro-life laws protect both women and the unborn from the dangers of abortion. One particular danger of chemical abortion is that pregnant women may be forced or tricked into taking mifepristone, causing an unwanted abortion. As the declaration filed by Intervenor-Plaintiffs demonstrates, this is a real problem. In that declaration, a woman describes how her boyfriend gave her abortion pills under the pretense that they were prenatal vitamins, killing her baby. *Missouri v. FDA*, No. 25-1580, Doc. No. 302-2 at 324 (E.D. Mo. Mar. 27, 2026). The FDA's removal of the in-person dispensing requirement for chemical abortion clearly facilitates coerced abortions.

This Court should deny Defendants' motion to dismiss.

5

## ARGUMENT

**I.    Missouri Retains Powers Which the Constitution Neither Delegates to the Federal Government nor Denies to the States, Including the Power to Regulate Abortion.**

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. It is one of the "first principles," *United States v. Lopez*, 514 U.S. 549, 552 (1995), of our system of government that Congress "can exercise only the powers granted to it." *McCulloch v. Maryland*, 17 U.S. 316, 405 (1819). James Madison explained in *Federalist* No. 45 that the "powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite."[7] This balance between state and federal power "was adopted by the Framers to ensure the protection of 'our fundamental liberties.'" *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985) (internal citations omitted) (Powell, J., dissenting).

Each state, in turn, may exercise "all the powers reserved" to them. *Chisholm v. Georgia*, 2 U.S. 419, 435 (1793). These reserved state powers include providing for "[p]ublic safety, public health, morality, peace and quiet, [and] law and order."

---

[7] The Federalist No. 45 at 241 (James Madison) (George Carey & James McClellan eds., The Liberty Fund 2001).

*Berman v. Parker*, 348 U.S. 26, 32 (1954). This broad "police power" is "denied the National Government and reposed on the States," *United States v. Morrison*, 529 U.S. 598, 618 (2000), including the authority to regulate the medical profession. *See, e.g.*, *Dent v. West Virginia*, 129 U.S. 114, 122-23 (1889); *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007); *Washington v. Glucksberg*, 521 U.S. 702, 231 (2000); *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006).

More specifically, this includes the power to regulate and prohibit abortion. The Supreme Court has described the "unbroken tradition of prohibiting abortion on pain of criminal punishment," *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 250 (2022), that began under the English common law in the thirteenth century. In America, local legislative bodies began prohibiting abortion long before Independence.[8] "For the first 185 years after the adoption of the Constitution, each State was permitted to address this issue in accordance with the views of its citizens." *Id.* at 224. Less than 50 years after Independence, Missouri made it a crime "to cause or procure the miscarriage of any woman then being with child." *Id*. at 302-03 (Appendix A). As early as 1835, Missouri explicitly provided criminal penalties for both pre- and post-quickening abortions. *Id*. at n.69.

---

[8] *See* Dennis J. Horan and Thomas J. Marzen, *Abortion and Midwifery: A Footnote in Legal History*, *in New Perspectives on Human Abortion* 200 (1981).

Missouri, it turned out, was at the leading edge of what became a national campaign, led by the American Medical Association, urging state legislatures to ban abortion. At its May 1859 convention, the AMA unanimously adopted a resolution condemning the "unwarrantable destruction of human life" and the "slaughter of countless children" and calling on state legislatures to strengthen their laws against abortion.[9] The campaign was effective. "By 1868, the year when the Fourteenth Amendment was ratified, three-quarters of the States, 28 out of 37, had enacted statutes making abortion a crime. . . . Of the nine States that had not yet criminalized abortion at all stages, all but one did so by 1910." *Dobbs*, 597 U.S. at 248-49.

While the Constitution, and its reservation of state powers, had not changed, the Supreme Court in 1973 significantly restricted this longstanding state authority to regulate abortion by holding that its previously created "right of privacy," *see Griswold v. Connecticut*, 381 U.S. 479, 485 (1965), was "broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Roe v. Wade*, 410 U.S. 113, 152 (1973). That decision quickly became, and remained, one of the Supreme Court's most controversial,[10] and states, including Missouri,

---

[9] Frederick N. Dyer, *The Physicians' Crusade Against Abortion* 76 (1999).

[10] *See* Thomas Jipping and Sarah Parshall Perry, Dobbs v. Jackson Women's Health Organization*: An Opportunity to Correct a Grave Error*, Heritage Found. Legal Mem. No. 293, Nov. 17, 2021, at 9-11.

continued to enact pro-life laws.[11] In fact, Missouri pro-life laws have been the basis for some of the Supreme Court's most significant abortion decisions. *See, e.g.*, *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976); *Planned Parenthood v. Ashcroft*, 461 U.S. 476 (1983); *Webster v. Reproductive health services*, 492 U.S. 490 (1989).

The Supreme Court corrected its error in 2022. Concluding that *Roe v. Wade* had been "egregiously wrong from the start," *Dobbs*, 597 U.S. at 231, the Court overruled *Roe* and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), in their entirety. "[T]he Constitution," the Court held, "does not confer a right to abortion . . . and the authority to regulate abortion must be returned to the people and their elected representatives."[12] *Id.* at 292. Today, Missouri law prohibits "using or prescribing any instrument, device, medicine, drug, or other means" for abortion, Mo. Rev. Stat. § 188.015(1), "except in cases of medical emergency," Mo. Rev. Stat. § 188.017.

Under the U.S. Constitution, the "supreme Law of the Land," U.S. Const., art. VI, Missouri retains its authority to regulate and prohibit abortion. This authority, of course, extends beyond simply enacting statutes; it includes actually enforcing those

---

[11] In 2006, Louisiana enacted a law banning most abortions that would go into effect when the supreme Court overruled *Roe v. Wade*.
[12] *Id*. at 292.

9

laws. Today, more than 60 percent of abortions across the United States are caused by drugs rather than through surgery.[13] When those drugs can be shipped into states with life-protecting laws like Missouri, those states' reserved authority to enforce their laws is undermined.

II.    **By Dropping the In-Person Requirement for Obtaining Mifepristone, the FDA Impaired Missouri's Authority to Enforce Its Pro-Life Laws.**

From the start, the FDA has allowed the marketing and use of mifepristone only under particularly rigorous safety restrictions. Originally, it could not be obtained, for example, through a pharmacy but had to be dispensed "directly in a physician's office, and . . . administered in the presence of a health professional."[14] The FDA unilaterally compromised its safety rules for mifepristone in 2011 and 2016, relaxing some of the restrictions but continuing to require that the drug "be dispensed in person to patients" only in certain clinical settings.[15]

---

[13] Rachel K. Jones et al., *Medication Abortion Now Accounts for More Than Half of All US Abortions*, Guttmacher Institute, Feb. 2022, https://www.guttmacher.org/article/2022/02/medication-abortion-now-accounts-more-half-all-us -abortions.

[14] Government Accountability Office, *Approval and Oversight of the Drug Mifeprex* 45 (2008).

[15] Julie Dohm, Mingham Ji, *An Introduction to Risk Evaluation and Mitigation Strategies*, 104 Contraception 4, 6 (2021) https://www.contraceptionjournal.org/action/showPdf?pii=S0010-7824%2821%2900134-7.

The FDA first relaxed the in-person dispensing requirement for mifepristone in April 2021, facing a court injunction supposedly based on the need to limit personal interactions during the COVID-19 pandemic.[16] Within a few months, however, the FDA dropped that pretense and announced that it would, without reference to the pandemic, remove that requirement altogether. After the Supreme Court overruled *Roe v. Wade* in June 2022, President Joe Biden called for making mifepristone as widely accessible as possible, including through telehealth and the U.S. mail.[17] He even singled out pro-life states that might attempt to restrict access to abortion drugs.[18]

President Biden's FDA responded in January 2023 by issuing a new set of regulations for obtaining and using mifepristone, removing the in-person dispensing protection and, for the first time, allowing retail pharmacies to provide the drug. Abortion activists also responded by advertising the easy availability of mifepristone

---

[16] *See* Letter from Janet Woodcock, MD, to Maureen G. Phipps, MD, and William Gorbman, MD (Apr. 12, 2021) https://prochoice.org/wp-content/uploads /FDA-Acting-Commissioner-Letter-to-ACOG-April-12-2021.pdf.

[17] FACT SHEET: President Biden Announces Actions In Light of Today's Supreme Court Decision on *Dobbs v. Jackson Women's Health Organization*, June 24, 2022, https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2022/06/24/fact-sheet-president-biden-announces-actions-in-light-of-todays-supreme-court-decision-on-dobbs-v-jackson-womens-health-organization/.

[18] Remarks by President Biden on the Supreme Court Decision to Overturn *Roe v. Wade*, June 24, 2022, https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/.

11

by mail without even a telehealth consultation, especially targeting states that prohibit the use and distribution of the drug. One study found that 84 percent of the abortion pills provided by the group Aid Access, the largest telemedicine abortion service, were sent to states with "near-total or telemedicine bans."[19] The group even advertises "How to get an abortion pill in Missouri" on its website.[20] The connection between the FDA's action in lifting the in-person dispensing requirement and the surge in medication abortions is evident even from the data collected by abortion activists.

The Society of Family Planning (SFP), for example, monitors, both nationally and state-by-state, the number of abortions and the methods by which they are obtained. SFP compared the average number of telehealth abortions in the most pro-life[21] and most pro-abortion[22] states between June 2023, shortly after the FDA lifted its in-person dispensing requirement, and June 2025, the latest month of available data.[23] Based on that data, telehealth abortions increased over this two-year period

---

[19] Abigail R.A. Aiken, James G. Scott, Rebecca Gomperts, *Provision of Abortion Medications Using Online Asynchronous Telemedicine Under Shield Laws in the US*, *JAMA.* 2025;334(15):1388–1390. doi:10.1001/jama.2025.11420.

[20] *Get an Abortion Pill Online in Missouri-Order Here*, Aid Access (last visited Mar. 26, 2026) https://aidaccess.org/en/page/2934676/where-can-i-buy-the-abortion-pill-online-in-missouri.

[21] These 19 states ban abortion either from conception or after six weeks of pregnancy.

[22] These 19 states either have no gestational abortion ban or draw the line at viability.

[23] The relevant data table can be found at

by just 16 percent in the pro-abortion states but by 190 percent in the pro-life states. In Missouri, telehealth abortions increased by 164 percent during this period.[24]

Evidence suggests that this significant increase in the number of abortions brought with it a statistically significant increase in the incidence of adverse events for women using mifepristone in Missouri. Insurance data gathered by the Ethics and Public Policy Center (EPPC) shows a potentially statistically significant increase

---

https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fsocietyfp.or g%2Fwp-content%2Fuploads%2F2025%2F12%2FWeCount-Report-10-June-2025-data-tables.xlsx&wdOrigin=BROWSELINK.
[24]



**Missouri**

April 2022 to June 2025

Source: Society of Family Planning, December 2025

in adverse event reporting from the state from 21.15% while the in-person dispensing requirement was in place to 26.97% after it was removed.[25]

This coordinated campaign to evade the laws of pro-life states is possible only because the FDA dropped its in-person dispensing requirement for mifepristone. These activists, through litigation and then political pressure, pushed the FDA to take this step and, when it did, immediately pushed through that open door. They do so increasingly from states that not only lack any abortion restrictions, but that have enacted so-called abortion "shield" laws with the express purpose of protecting from liability abortion activists who intentionally violate the laws of pro-life states, undermining those states' law enforcement efforts.[26] The three law professors who developed the theory behind these law write that they "seek to protect abortion providers, helpers, and seekers in states where abortion remains legal from *legal attacks taken by antiabortion state actors*."[27] This way, from their homebase in a pro-abortion state, abortion activists can use the mail to send abortion drugs into pro-life states. In other words, they violate federal law by sending abortion drugs through

---

[25] Hall, Anderson, *supra* note 4.

[26] *See* Thomas Jipping, *Abortion "Shield" Laws Undermine Interstate Comity and Medical Practice and Raise Constitutional Questions*, Heritage Found. L. Mem. No. 366, December 30, 2024.

[27] David S. Cohen et al., *Abortion Shield Laws* 2 NEJM Evidence (March 28, 2023) (emphasis added) https://evidence.nejm.org/doi/full/10.1056/EVIDra2200280.

14

the mail as a means of violating state law by causing abortions in pro-life states,[28] a scheme made possible by the FDA dropping its longstanding rule that this dangerous drug must be obtained in person.

### III. Missouri has Standing to Sue the FDA for Undermining its Authority to Enforce its Aboriton Laws.

To establish Article III standing, a litigant must allege an "injury in fact" that is traceable to the defendant and "is likely redressable by judicial relief." *Washington v. U.S. Food and Drug Adm.*, 108 F.4th 1163, 1172 (9th Cir. 2024). That general requirement applies to states as well as to individuals seeking to have a federal court settle a legal dispute.

A month after the FDA issued its new safety rules for mifepristone that did not include the in-person dispensing requirement, a group of eighteen pro-abortion states sued the agency "arguing that the agency should have gone further to eliminate hurdles to accessing mifepristone." *Id*. Idaho sought to intervene as a plaintiff, asserting several different standing theories, including that "elimination of the in-person dispensing requirement will harm its sovereign interest in law enforcement by making illegal mifepristone use harder to detect." *Id*. at 1176. The Ninth Circuit rejected that argument for three reasons. First, it "depends heavily on speculation

---

[28] For more analysis of abortion shield laws, including their constitutional implications and distorting effects on interstate comity and the practice of medicine, *see* Jipping *supra* note 26.

15

that doctors and pregnant women will break state law." *Id*. at 1177. Second, "a logistical burden on law enforcement [does not] constitute[] a cognizable Article III injury." *Id*. Finally, the FDA had not "interfere[d] with the state's *authority* to enact or enforce restrictions on medical abortion within its boundaries." *Id*.

Ninth Circuit precedent, of course, is not binding in Missouri. Even so, the data presented above show that it takes virtually no speculation at all to appreciate the reality of this situation. Abortion activists sought, and achieved, elimination of the in-person dispensing requirement, the most significant obstacle to their campaign to systematically violate the laws of pro-life states, including Missouri. Given the green light by the FDA, they have targeted pro-life states with the intent to violate their laws.

The Supreme Court has recognized that a state has an interest in retaining its authority to "exercise . . . power over individuals and entities within [its] jurisdiction," including the "power to create and enforce a legal code." *Alfred L. Snapp and Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). States also have an interest in protecting their populace. *Id.* at 602. This would mean little if the federal government could create conditions under which enforcing that law is nearly impossible in practice. At least where the causal connection between specific federal action and systematic lawbreaking is clear, as it is in this case, a state must

16

be able to seek judicial redress in defense of its interest in enforcing laws enacted pursuant to its reserved powers.

This is not the only theory on which Missouri relies for standing to bring this lawsuit. It does, however, present an important opportunity to assert Missouri's interest in light of the rapidly changing abortion landscape. Missouri's compelling interest in protecting human life in the womb is timeless, but the means by which it furthers that interest are changing as the ways in which human life in the womb is under threat change. Because the FDA regulates the drug used today to cause most abortions across the country, its actions significantly affect whether, and to what extent, Missouri can pursue what the Constitution reserves to it the power to do. Missouri's argument on this point is not simply a general assertion of a policy objective and a preference for federal policy making that objective easier to achieve. Instead, Missouri points to a specific federal agency action, taken in violation of federal law, directly tied to widespread violation of Missouri law. Missouri must be able to challenge that encroachment on its authority to protect life.

## CONCLUSION

For the forgoing reasons, this Court should rule for Plaintiffs-Intervenors and deny the motion to dismiss.

Respectfully submitted,

/s/ J. Marc Wheat
J. MARC WHEAT
   *Counsel of Record*
(VA State Bar No. 39602)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

18