UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF MISSOURI et al., | ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-1580-CMS |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **NOTICE OF SUPPLEMENTAL AUTHORITY**

On March 27, 2026, the States filed their opposition to Federal Defendants' motion to stay or, alternatively, motion to dismiss and Danco Laboratories' and GenBioPro, Inc.'s motions to dismiss.  Doc. 302.  The States now submit this notice of supplemental authority to advise the Court of *Louisiana v. FDA*, No. 6:25-cv-01491, 2026 WL 936958 (W.D. La. Apr. 7, 2026).

*Louisiana* involves a challenge to the legality of FDA's 2023 agency action removing the in-person dispensing requirement for mifepristone.  *Id.* at *1.  Shortly after filing their lawsuit, the plaintiffs moved for preliminary injunctive relief (a stay of the agency action under 5 U.S.C. § 705); the two mifepristone manufacturers moved to dismiss; and the federal defendants moved to stay the case.  *Id.* at *1–2.  In ruling on these motions, the court addressed two matters that are also at issue here.

First, the State's standing.  As relevant here, the Court rejected the manufacturers' and federal defendants' argument that Louisiana lacked standing to challenge the FDA's actions regarding mifepristone.  *See id.* at *8–12.  Much like the States alleged in this case, Louisiana alleged standing based on sovereign harms caused by the 2023 REMS' facilitating abortions that violate state law and based on pocketbook injuries (the expenditure of Medicaid dollars "for

emergency room medical care stemming from mifepristone use by residents"). *Id.* at *9. The court readily agreed that these injuries establish standing. *See id.* at *10–12.

Regarding the sovereign harms, the court explained that "the 2023 REMS was approved without adequate consideration, at least in part, as part of an effort to circumvent anti-abortion states' ability to regulate abortion." *Id.* at *10. "[T]he out-of-state medical providers prescribing mifepristone via telemedicine or mail[ ] responded to the 2023 REMS by expanding mifepristone access to pro-life states like Louisiana in ways that were *entirely predictable*." *Id.* (emphasis added). "These actions cause concrete and ongoing injury to Louisiana . . . ." *Id.* The States here suffer the same concrete and ongoing sovereign injury as Louisiana. Doc. 302 at 10–12.

Similarly, the States and Louisiana have demonstrated that they suffer pocketbook injury because of the REMS. *Louisiana*, 2026 WL 936958, at *12. Louisiana, for example, put forth sufficient evidence to demonstrate that it has suffered and continues to suffer pocketbook injury because it must pay Medicaid costs for emergency room care that women get because of mifepristone. *Id.* "Crucially, FDA's 'own documents' show that 'emergency room care is statistically certain' in mifepristone cases." *Id.* (citation omitted). In addition, Louisiana showed that some Louisiana women who were on Medicaid had in fact had emergency room care and hospitalization because of mifepristone and that it was "likely that many more Medicaid patients have required similar care due to complications from mifepristone." *Id.* As the court explained, "even one dollar's worth of harm" is sufficient to establish financial injury. *Id.* (quoting *United States v. Texas*, 599 U.S. 670, 688 (2023) (Gorsuch, J., concurring in the judgment)). Thus, Louisiana had established a pocketbook injury that was traceable to FDA's actions. *Id.* Here, too, the States have demonstrated that they have suffered and continue to suffer pocketbook injuries because of the FDA's actions regarding mifepristone, Doc. 302 at 12–16. Like the *Louisiana*

court, this Court should conclude that the States have standing to challenge FDA's mifepristone actions. Doc. 302 at 10–16.

Second, the *Louisiana* court considered whether the court should stay the case in light of the FDA's ongoing review of the mifepristone REMS. *Louisiana*, 2026 WL 936958, at \*14–17. Although the court granted the stay request, it premised that decision in large part on the procedural posture of the case: The plaintiffs filed the case *after* FDA had announced its review, and they moved for interim relief, a stay of the 2023 REMS. *Id.* at \*15–16. According to the court, any such stay would have upset the status quo of mifepristone availability around the country and related litigation. *Id.* at \*17. By contrast, this case *long* predates the FDA's supposed review, and the States have *not* moved for preliminary relief here. The States are instead proceeding down the normal path, compilation of an administrative record and summary-judgment briefing. At this point, staying these proceedings would be inappropriate and premature. Neither the FDA nor the manufacturers will suffer harm from continuing to litigate this case because the status quo will remain until final judgment. Further, if FDA decides to move for a stay post-summary judgment briefing, the Court will be in a better position to determine whether FDA is actually doing its review and if it is, how much longer it will take for FDA to reach its decision. The States should *not* have to hit pause on seeking relief merely because FDA has offered vague and unsubstantiated assurances that it is conducting a review of mifepristone. Thus, the Court should deny FDA's request to indefinitely stay this case and allow the States to continue seeking final resolution and relief from the undisputed and irreparable harm that they have experienced and continue to experience. *See, e.g.*, *id.* at \*16 ("No doubt, the State has shown evidence of ongoing harm owing to the 2023 REMS."); *see also id.* at \*15 ("FDA does not defend its decision-making on the merits . . . .").

For these reasons and those articulated in the States' opposition, Doc. 302, the Court should deny FDA's request to stay indefinitely this case and conclude that the States have standing.

Date: April 10, 2026

Respectfully submitted,

**CATHERINE HANAWAY**
Missouri Attorney General

*/s/ Louis J. Capozzi, III*
Louis J. Capozzi, III, 77756MO
  *Solicitor General*
Kathleen Hunker, 24118415TX
  *Principal Deputy Solicitor General*
Alexandria L. Overcash, 97153VA
  *Assistant Solicitor General*
Madeline S. Lansdell, 78538MO
  *Assistant Solicitor General*

Office of the Attorney General
815 Olive St. Suite 200
St. Louis, Missouri 63101
Phone: (573) 645-9662
Fax (573) 751-1774
Louis.Capozzi@ago.mo.gov
Kathleen.Hunker@ago.mo.gov
Alexandria.Overcash@ago.mo.gov
Madeline.Lansdell@ago.mo.gov

*Counsel for Intervenor-Plaintiff*
*State of Missouri*

**RAÚL R. LABRADOR**
Idaho Attorney General

Michael Zarian, #12418ID
  *Solicitor General*

Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
Telephone: (208) 334-2400
Facsimile: (208) 854-8071
michael.zarian@ag.idaho.gov

Counsel for Intervenor-Plaintiff State
of Idaho

**KRIS W. KOBACH**
Attorney General of Kansas

James R. Rodriguez
  *Assistant Attorney General*

Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-7109
Facsimile: (785) 296-3131
Jay.Rodriguez@ag.ks.gov

*Counsel for Intervenor-Plaintiff*
*State of Kansas*

4

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, a true and accurate copy of the foregoing was electronically filed by using the Court's CM/ECF system to be served on all counsel of record entered in the case.

/s/ *Louis J. Capozzi, III*